UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOYCE TAYLOR-WILLIAMS,

      Plaintiff,

v.                      Case No. 8:16-cv-87-T-33MAP

RAYMOND REMBERT,

      Defendant.
_____/

**ORDER**

This matter comes before the Court upon Defendant Deputy Raymond Rembert's Dispositive Motion for Summary Judgment (Doc. # 48), filed on December 13, 2016. Plaintiff Joyce Taylor-Williams filed a response in opposition on December 28, 2016. (Doc. # 49). Rembert filed a reply on January 11, 2017. (Doc. # 50). For the reasons that follow, the Court grants the Motion to the extent that it finds Rembert entitled to qualified immunity as to Count II and dismisses Taylor-Williams' state-law claim, Count I. Without opining on the merits of her state-law claim, the Court notes that Count I is dismissed without prejudice and therefore Taylor-Williams may, if she so elects, pursue the claim in state court.

## I. __Background__

Taylor-Williams and her daughter, a non-party to this action, were long-time members of the Bible Based Fellowship Church, located at 4811 Ehrlich Road, Tampa, Florida 33647. (Doc. # 48-2, Taylor-Williams Depo. at 53:14); (Doc. # 48-3 at 2). Taylor-Williams' daughter at some unspecified point filed suit against a pastor of the Church, alleging sexual assault and breach of fiduciary duty. (Doc. # 48-3 at 1). As a result, both Taylor-Williams and her daughter were excommunicated from the Church. (Id.). And so began the sequence of events leading up to this 42 U.S.C. § 1983 false-arrest and state-law malicious prosecution lawsuit.

On March 3, 2012, Taylor-Williams was removed from the Church's property, issued a verbal trespass warning by a non-party officer, and told she was no longer welcome on the Church's property. (Doc. # 48-2, Taylor-Williams Depo. at 39:3-40:7, 43:11-44:13); (Doc. # 48-1 at 4). Shortly after she was issued a trespass warning, Taylor-Williams called the cellphone of the Church's pastor and left a voicemail message in which she "use[d] profanity and t[old] the victim that he should get his grandchildren ready because they would not be able to see him soon. The voice recording went on to call the victim a 'whore' and indicated the victim would be going to

2

jail very soon." (Doc. # 48-5 at 7). As a result, a deputy with the Hillsborough County Sheriff spoke with Taylor-Williams on March 7, 2012, to advise her to stop calling the pastor and to confirm that she understood the parameters of the previously-issued trespass warning; Taylor-Williams confirmed she understood. (Id.). In spite of the trespass warning, Taylor-Williams returned to the Church on March 18, 2012, whereupon she was arrested and charged with trespassing. (Doc. # 48-2, Taylor-Williams Depo. at 45:17-23, 49:3-4); (Doc. # 48-6). Taylor-Williams was released on her own recognizance the same day. (Doc. # 48-2, Taylor-Williams Depo. at 49:5-9).

A week later, on March 25, 2012, Taylor-Williams drove with her daughter to 4809 Ehrlich Road, which was the office building of a certified public accountant, to protest against her excommunication. (Id. at 49:10-24, 52:8-12, 53:11-13). Taylor-Williams and her daughter parked in the accountant's lot, unloaded some of the homemade signs they had brought with them, and, standing on either the accountant's driveway or Ehrlich road, began to protest their excommunication from the Church. (Id. at 50:12-16, 52:24-53:1, 56:18-56:24). During the protest, Taylor-Williams and her daughter only held the signs, they did not place any signs in the ground.

(Id. at 56:25-57:10). Taylor-Williams testified during her deposition that she was not on the Church's property at any point on March 25, 2012. (Id. at 59:15-17). Taylor-Williams' daughter also submitted sworn testimony via an affidavit that her mother was not on the Church's property that day. (Doc. # 49-1 at ¶ 3).

Rembert and two Church officials, however, contend they saw Taylor-Williams on the Church's property. (Doc. # 48-8 at 12-14). More specifically, Rembert testified during his deposition that he received a call over his Church-issued radio from David Weaver Rogers, an officer with the Tampa Police Department who provided security for inside the Church and who was also a Church official, and Raymond Allmond, the Church's property manager (both non-parties to this action) that he was needed because Taylor-Williams was back on the Church's property. (Doc. # 48-9, Rembert Depo. at 8:24-9:9, 10:11-25, 16:5-14, 21:4-10, 44:1-9). Rembert also testified during his deposition that he "observed Dr. Williams on the property with her daughter . . . setting up protests with signs . . . [and t]he owners of the [C]hurch c[ame] out and sa[id] she's back on the property, she's been trespassed, we want her off the property." (Id. at 15:20-16:14). Moreover, Rembert testified he saw Taylor-Williams' signs in the ground

4

on the Church's property. (Id. at 12:19-21). Furthermore, Rembert knew Taylor-Williams had been previously warned and arrested for trespassing on the Church's property. (Id. at 45:9-12, 46:1-8, 22-24).

Allmond's deposition testimony is somewhat more equivocal as to who made the radio transmission, though. Allmond first states it was Rogers who radioed that Taylor-Williams was back on the Church's property but, upon further questioning, Allmond stated he "can't remember which one of the guys, whether it was [the] Deputy or Weaver [who]. . .," made the radio transmission. (Doc. # 48-10, Allmond Depo. at 11:8-12, 16:2-21).

In any event, Rembert responded to where Taylor-Williams was located. (Doc. # 48-9, Rembert Depo. at 10:14-16). When Taylor-Williams insisted she was not trespassing and refused to leave, Rembert arrested Taylor-Williams for trespass after warning; she was arrested on March 25, 2012, and was not released from custody for 19 days. (Doc. # 48-2, Taylor-Williams Depo. at 58:18-62:16, 63:23-25, 67:1-2); (Doc. # 48-8). After her release, Taylor-Williams again attempted to return to the Church on May 6, 2013, and May 10, 2013. (Doc. # 48-2, Taylor-Williams Depo. at 73:9-18).

Taylor-Williams initiated this action on January 13, 2016, by filing her Complaint while proceeding pro se. (Doc. # 1). Taylor-Williams subsequently obtained counsel and filed her Second Amended Complaint on May 6, 2016. (Doc. ## 12, 31). The Second Amended Complaint asserts a state-law claim for malicious prosecution against Rembert in his individual capacity (Count I) and a 42 U.S.C. § 1983 claim for false arrest against Rembert in his individual capacity (Count II). Rembert now moves for summary judgment on the basis of qualified immunity. (Doc. # 48). Taylor-Williams has responded in opposition and Rembert has replied. (Doc. ## 49, 50). The Motion is ripe for review.

## II.  **Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one

inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

Before continuing, the Court notes that Rembert asserts arguments as to both his individual and official capacities because, according to him, "it is unclear if Plaintiff had intended to attack Deputy Rembert in his OFFICIAL CAPACITY." (Doc. # 48 at 15). The Court disagrees that the Second Amended Complaint is unclear as to the capacity in which Rembert is being sued. Count II is styled 42 U.S.C. § 1983 False Arrest against Defendant Rembert in his own Individual & Personal Capacity. (Doc. # 31 at 5). The substantive allegations contained within Count II make it apparent that Taylor-Williams is seeking to impose liability against Rembert in his individual capacity. (Id. at 6-7). Accordingly, the Court

only addresses arguments directed at individual-capacity liability.

### A.   Claim Brought under 42 U.S.C. § 1983

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004). Rembert seeks qualified immunity in this case.

"Qualified immunity affords complete protection to government officials sued individually," Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012), except in cases where "the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002). Qualified immunity "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)).

"[T]he official must first establish that he was performing a 'discretionary function' at the time the alleged violation of federal law occurred." Crosby, 394 F.3d at 1332 (citation omitted). "To determine whether an official was engaged in a discretionary function, [a court] consider[s] whether the acts the official undertook 'are of the type that fell within the employee's job responsibilities.'" Id. (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)). In this case, the parties do not dispute whether Rembert was performing a discretionary function at the time of the alleged violation. Further, the Court's independent research shows that Rembert was performing a discretionary function. See, e.g., Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008) (stating that "the deputies were lawfully executing their legal duty by informing [plaintiff] he was no longer allowed to be on the Ritz's property, escorting him out, and giving him a trespass warning").

The Court follows a two-part analysis in determining whether qualified immunity applies. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). The first part asks "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Id. (quoting Hope v. Pelzer, 536

10

U.S. 730, 736 (2002)) (internal quotation marks omitted) (alteration in original). The second part asks "whether the right was clearly established." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). Courts have discretion to decide the order in which to address the two parts. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Nevertheless, "[b]oth elements . . . must be satisfied for an official to lose qualified immunity." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010).

## 1.   Constitutional-Violation Analysis

Taylor-Williams "must establish qualified immunity is not appropriate because the facts when viewed in the light most favorable to [her] show that [Rembert] violated a constitutional right." Benson v. Gordon Cty., 479 Fed. Appx. 315, 317 (11th Cir. 2012) (citing Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005)). "At summary judgment, [the Court] cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's [conduct was unconstitutional] . . . under those circumstances." Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2011) (citing Vinyard, 311 F.3d at 1347-48 as "evaluating, at summary judgment, the allegedly

11

excessive force under the facts as described by the plaintiff, notwithstanding the defendant-officer's different version of events").

Taylor-Williams' claim against Rembert is one for false arrest. (Doc. # 31 at ¶¶ 17-20). A claim for false arrest may not lie in the presence of probable cause. See Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (stating probable cause is "an absolute bar" to a § 1983 claim alleging false arrest). "Probable cause exists if 'the facts and circumstances within the officer's knowledge, of which he or she has reasonable trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557-58 (11th Cir. 1993) (quoting Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990)).

In conducting the qualified immunity analysis, "the issue is not whether probable cause existed in fact, but whether the officer had 'arguable' probable cause to arrest." Id. at 1558 (citing Moore v. Gwinnett Cty., 967 F.2d 1495, 1497 (11th Cir. 1992)). In other words, qualified immunity applies if "a reasonable officer 'could have believed that probable cause existed.'" Id. (quoting Moore, 967 F.2d at

1497). "Arguable probable cause does not require an arresting officer to prove every element of a crime . . ., [because to require so] would negate the concept of probable cause and transform arresting officers into prosecutors." Lee, 284 F.3d at 1195 (quoting Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001)). Notably, arguable probable cause for an arrest is "a more lenient standard than probable cause." Knight v. Jacobson, 300 F.3d 1272, 1274 (11th Cir. 2002). Furthermore, the Eleventh Circuit has "recognized that an officer should not be held personally liable where the officer reasonably, but mistakenly, concludes that probable cause is present." Kinzy v. Warren, 633 Fed. Appx. 705, 707 (11th Cir. 2013) (citing Grider, 618 F.3d at 1257).

Taylor-Williams bears "the burden of demonstrating the absence of probable cause in order to succeed in [her] § 1983 claim." Rankin, 133 F.3d at 1436 (citing Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997)). However, she has failed to do so. To begin with, the Court notes any argument related to whether the accountant asked for or wanted Taylor-Williams removed from 4809 Ehrlich Road is not material to her arrest for trespass after warning with respect to 4811 Ehrlich Road.

Turning to the arrest that forms the predicate for her false-arrest claim, Taylor-Williams first relies upon the

13

affidavit of her daughter to show she was not in fact on the property. (Doc. # 49 at ¶ 8). The affidavit does state, "[w]e never stepped a single foot on the Church's property." (Doc. 49-1 at ¶ 3); see also (Doc. # Doc. # 48-2, Taylor-Williams Depo. at 59: 15-17). The issue at hand, however, is not whether Taylor-Williams in fact committed the offense of trespass after warning; rather, the issue is whether Rembert had arguable probable cause to arrest Taylor-Williams for that offense. Post, 7 F.3d at 1558 ("the issue is not whether probable cause existed in fact, but whether the officer had 'arguable' probable cause to arrest") (citation omitted); see also Lee, 284 F.3d at 1195 ("Arguable probable cause does not require an arresting officer to prove every element of a crime . . ., [because to require so] would negate the concept of probable cause and transform arresting officers into prosecutors."). Furthermore, that the parties dispute whether Taylor-Williams was on the Church's property is not sufficient to preclude the grant of qualified immunity at the summary judgment stage. Wate v. Kubler, 839 F.3d 1012, 1019 (11th Cir. 2016) ("we consider the record in the light most favorable to the plaintiff, eliminating all issues of fact. '"By approaching the record in this way, the court has the plaintiff's best case before it. . . . [M]aterial issues of

disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity[.]"'" (quoting Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010))).

In addition, Taylor-Williams argues the Church directed Rembert to arrest Taylor-Williams in furtherance of a "premeditated plan." (Doc. # 49 at ¶ 10). While the portion of Allmond's deposition transcript cited by Taylor-Williams supports the contention that Church officials wanted Taylor-Williams arrested if she returned to the Church, it does not support a reasonable inference that Allmond or Rogers lied about Taylor-Williams being on the Church's property. (Doc. # 48-10, Allmond Depo. at 34:23-37:22). Moreover, even assuming arguendo that Allmond's testimony could support an inference that Allmond and Rogers lied to Rembert about seeing Taylor-Williams on the Church's property, Allmond's testimony does not support an inference that Rembert knew of such falsifications. See (Id.).

What the record does show is that 4811 Ehrlich Road and 4809 Ehrlich Road are adjacent properties separated by a line of trees, but the space between the two properties does not contain a visible marker identifying where one property ends

15

and the other begins. (Doc. # 48-3 at 9); (Doc. # 49-1 at 4). And, as required at this stage, see, e.g., Wate, 839 F.3d at 1019, the Court must accept that Taylor-Williams was not in fact on the Church's property and that she had not placed any of her signs in the ground on the Church's property. (Doc. # 48-2, Taylor-Williams Depo. at 56:25-57:10, 59:15-17).

However, the record also shows that Rembert received a call over his Church-issued radio from Rogers that he saw Taylor-Williams once again on the Church's property. (Doc. # 48-8 at 14); (Doc. # 48-9, Rembert Depo. at 10:8-25, 12:19-21, 15:25-16:14, 44:1-9); (Doc. # 48-10, Allmond Depo. at 10:23-11:12, 16:2-21). Taylor-Williams does not cite any evidence contradicting Rembert's testimony that a Church official, who had seen Taylor-Williams on the Church's property, told him as much. The record further reflects that Rembert knew Taylor-Williams had been previously warned and arrested for trespassing on the Church's property. (Doc. # 48-9, Rembert Depo. at 45:9-12, 46:1-8, 22-24).

On this record, the Court finds Joyce v. Crowder, 509 Fed. Appx. 969, 970 (11th Cir. 2013), instructive. In Joyce, a group of protestors, and deputies from the relevant sheriff's office, stood along the east side of a publicly-owned canal. Joyce, 509 Fed. Appx. at 955. Eleven of the

protestors swam across the canal to its west side and a deputy was dispatched to the west side of the canal to monitor the situation. Id. at 955-56. On the west side of the canal, which was privately-owned land, there was a grassy area with a heavily wooded area just a few feet behind it. Id. at 956. The privately-owned land was not demarcated by signs, posts, or fencing that were visible by the deputies on the east side of the canal. Id.

The eleven protestors eventually entered the brush, which obstructed the deputies' view of them. Id. Around the same time, the west-side deputy began to trek through the wooded area and had to cross over a barbed wire fence to enter upon the privately-held land; while on the privately-held land, the west-side deputy saw "multiple individuals walking around." Id. The west-side deputy then radioed to the deputies on the east side of the canal and stated that the eleven protestors were on the west side of the fence, i.e., on the privately-held land. Id. When the protestors swam back to the east side of the canal, they were arrested for trespass and, thereafter, brought a § 1983 claim against the arresting officers. Id.

At summary judgment, the arresting officers argued they were entitled to qualified immunity because they had arguable

probable cause to arrest the protestors for trespassing. Id.
The district court denied qualified immunity on the grounds
that "regardless of what Sergeant Cunningham[, i.e., the
west-side deputy,] told them, the arresting officers lacked
arguable probable cause . . . because they did not personally
see any fence or postings from the east side of the canal .
. . . Id. at 957. The arresting officers appealed. Id. at
958.

     The Eleventh Circuit noted that, "if Sergeant Cunningham
told the arresting officers that he had seen the plaintiffs
on the private property side of . . . [the] fence, the
arresting officers would not have lacked arguable probable
cause . . . simply because they could not see the fence
through the brush on the west side of the canal." Id. at 959.
The court also went on to note that, while there was a genuine
issue of material fact about whether the eleven protestors
crossed the fence, the protestors-turned-plaintiffs had not
introduced evidence disputing that the west-side deputy told
the arresting officers he saw them on the private-property
side of the fence. Id. at 960. Because "[n]o one dispute[d]
that the arresting officers were told that," such a fact
"establishe[d] at least arguable probable cause for the
arresting officers . . . ." Id. Accordingly, the Eleventh

Circuit reversed the district court's decision and remanded with instructions to enter judgment in favor of the arresting officers. Id.

Similarly, in this case, the record shows that the arresting officer was told the arrestee was seen on private property. That is, Rogers told Rembert that he saw Taylor-Williams on the Church's property. (Doc. # 48-8 at 14); (Doc. # 48-9, Rembert Depo. at 10:8-25, 12:19-21, 15:25-16:14, 44:1-9). Although Taylor-Williams states she was not in fact on the property, she, like the plaintiffs in Joyce, failed to introduce evidence disputing that Rembert was told the arrestee had been seen on Church property. Additionally, Rembert testified he saw Taylor-Williams on what he thought was the Church's property. (Doc. # 48-9, Rembert Depo. at 15:20-16:14). Accordingly, given the proximity of the properties, the fact that Rogers told Rembert he saw Taylor-Williams back on Church property, the fact that Rembert himself saw Taylor-Williams standing on what he thought was Church Property, and the fact that Rembert knew Taylor-Williams had been previously issued a trespass warning, the Court concludes Rembert had arguable probable cause to arrest Taylor-Williams for trespassing after warning. Therefore, Rembert is entitled to qualified immunity.

## 2.   <u>Clearly-Established Analysis</u>

Assuming for the sake of argument that Taylor-Williams established the lack of arguable probable cause, she would still need to satisfy the clearly-established prong of the analysis. Under this prong, Taylor-Williams "must also show that the right involved was clearly established at the time of the putative misconduct." <u>Benson</u>, 479 Fed. Appx. at 317 (quoting <u>Terrell</u>, 668 F.3d at 1250) (internal quotation marks omitted). "The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right." <u>Bussey-Morice v. Gomez</u>, 587 Fed. Appx. 621, 627 (11th Cir. 2014) (citing <u>Coffin v. Brandau</u>, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). "'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (quoting <u>Hope</u>, 536 U.S. at 741) (alterations in original). "[T]he touchstone of qualified immunity is notice." <u>Bussey-Morice</u>, 587 Fed. Appx. at 627 (citing <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1078 (11th Cir. 2003)).

The Eleventh Circuit has outlined two methods for determining whether the right in question was clearly

established at the time of the alleged misconduct. Fils, 647 F.3d at 1291. Under the first, "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law." McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing Marsh v. Butler Cty., Ala., 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc)).

Under the first method, the Court looks at the relevant case law at the time of the violation; the right in question is "clearly established if 'a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law.'" Fils, 647 F.3d at 1291 (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1333 (11th Cir. 2008)) (alteration in original). The cases need not be "materially similar" to the officer's conduct. Id. "But, where the law is stated in broad propositions, 'a very high degree of prior factual particularity may be necessary.'" Id. (quoting Hope, 536 U.S. at 740-41).

The second method, termed the obvious-clarity method, "involves evaluating the officer's conduct and deciding whether the officer's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the

unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the law of fact-specific case law on point." Bussey-Morice, 587 Fed. Appx. at 627 (quoting Fils, 647 F.3d at 1291) (alteration in original) (citation and internal quotation marks omitted). This method "recognizes that although concrete facts are typically necessary to provide an officer with notice of 'the hazy border between [constitutional and unconstitutional actions] . . .,' when an officer's conduct is 'so outrageous that it clearly goes "so far beyond" these borders, qualified immunity will not protect him . . . .'" Id. (quoting Fils, 647 F.3d at 1291-92).

The obvious-clarity method "offers a narrow exception to the general rule that only case law and specific factual scenarios can clearly establish a constitutional violation," however, it "is a difficult one to meet." Id. at 627-28. Nevertheless, "qualified immunity will be denied if the preexisting law '[made] it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue.'" Montero v. Nandlal, 597 Fed. Appx. 1021, 1026 (11th Cir. 2014) (quoting Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010)).

Taylor-Williams defines the "clearly established law" as "prohibit[ing the] . . . falsif[ication of] allegations, evidence, witnesses and witness statements . . . to achieve a spontaneous, considered, or pre-mediated arrest . . . ." (Doc. # 49 at ¶ 14). And, she attempts to carry her burden under the clearly-established prong by relying on a case from the Fifth Circuit Court of Appeals. That alone is sufficient reason to find that Taylor-Williams has failed to carry her burden because, in determining whether the law was clearly established, only decisions of the Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida are relevant, at least for a district court sitting in the Eleventh Circuit. McClish, 483 F.3d at 1237. Furthermore, Taylor-Williams makes no argument under the obvious-clarity method and the Court cannot do so for her. See Lampkin-Asam v. Volusia Cty. Sch. Bd., 261 Fed. Appx. 274, 277 (11th Cir. 2008) (noting a district court may not "act as counsel for a party") (citations omitted).

But, even if the Court were to assume that preexisting law made it obvious that Rembert's acts violated Taylor-Williams' rights under the specific set of circumstances in this case, Rembert would still be entitled to qualified immunity because Taylor-Williams failed to show a

23

constitutional violation, i.e., the lack of arguable probable cause. Grider, 618 F.3d at 1254. Therefore, Rembert is entitled to qualified immunity as to Count II.

**B.   State-Law Claim**

Having found that Rembert is entitled to qualified immunity on Count II, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state-law claim, Count I. See 28 U.S.C. § 1367(c)(3). Accordingly, Count I is dismissed without prejudice. See Hicks v. Moore, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (stating, "[c]ertainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) (stating, "[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.")). "Because . . . Plaintiff['s] federal claim[] [did not] survive summary judgment, the remaining state law claim[] . . . will be dismissed without prejudice so that Plaintiff[] may, if [she] choose[s], pursue [it] in

24

state court." <u>Borsella v. Parker</u>, No. 6:11-cv-1249-Orl-28GJK,

2013 WL 375480, at *1 (M.D. Fla. Jan. 31, 2013).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Deputy Raymond Rembert's Dispositive Motion

for Summary Judgment (Doc. # 48) is **GRANTED** insofar as

Rembert is entitled to qualified immunity as to Count

II.

(2)  Count I is **DISMISSED WITHOUT PREJUDICE.**

(3)  Defendant Deputy Raymond Rembert's Motion in Limine

(Doc. # 51) is **DENIED AS MOOT.**

(4)  The Clerk is directed to enter judgment in favor of

Defendant Deputy Raymond Rembert as to Count II.

(5)  Once judgment is entered, the Clerk shall **CLOSE** this

case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>20th</u> day of January, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE